UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ROBERT L. DYKES,

        Plaintiff,

v.

UNKNOWN BENSON et al.,

        Defendants.

_____/

Case No. 1:18-cv-664

Honorable Paul L. Maloney

**OPINION AND ORDER**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Gainer, Austin, Iverson, Davis, Thompson, Miseta, Thomas, Smith, Shiebner, Goodspeed, and Burke, and dismiss Plaintiff's claims against them without prejudice.

**Discussion**

    I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Michigan. The events about which he complains occurred at that facility. Plaintiff sues ECF personnel including Corrections Officers Unknown, Benson, Unknown Gainer, Unknown Austin, Unknown Iverson, Unknown Davis, and Unknown Thompson; Classification Director Unknown Haske; Assistant Resident Unit Supervisor Unknown Miseta; Resident Unit Manager J. Thomas, Assistant Deputy Warden

Unknown Smith; Deputy Warden Unknown Shiebner; Hearing Investigator Unknown Goodspeed; and Hearing Officer Unknown Burke.

Plaintiff arrived at ECF during September of 2017. Plaintiff was initially classified to work as a porter. (Program Classification Report, ECF No. 1-1, PageID.78.) Plaintiff alleges that he had previously earned a custodial maintenance certificate. (Plaintiff's Declaration, ECF No. 4, PageID.202.) He contends that a porter holding such a certificate was entitled to earn, initially, $1.08 per day and after 30 days $1.31 per day. (*Id*.) MDOC Policy Directive 05.02.110 provides some support for Plaintiff's claim. The MDOC pays working prisoners according to a standard pay scale. *Id*. at ¶W. Where a prisoner is assigned to a semi-skilled or skilled position, he may be entitled to additional money. *Id*. at ¶X. The policy directive offers as an example of circumstances permitting additional payment the following: "prisoner is assigned as a porter <u>and</u> has completed a custodial maintenance technology program[.]" *Id*. Moreover, where a prisoner is required to work under unusually difficult conditions (the policy directive offers the example of "bloodborne pathogen cleanup"—a skill demonstrated by Plaintiff's certificate), he is entitled to one and one-half times the normal rate of pay.

Plaintiff was working as a general porter on October 21, 2017, when he raised the issue of his pay with Defendant Benson. (Compl., ECF No. 1, PageID.16.) The role of general porter is apparently not a semi-skilled or skilled position that might warrant the additional pay. Plaintiff reports that Defendant Benson told Plaintiff he would never receive the additional pay, he would never receive a position higher than general porter, and that he may not even hold that position for long. (*Id*.) Benson told him that she would talk with Defendant Haske to "make sure." (*Id*.) Plaintiff describes Benson's conduct as an egregious abuse of authority. He filed a grievance

2

against her that day for harassment. (Grievance ECF 2017-10-3533-17A, ECF No. 1-1, PageID.35-44.)[1]

The next day, Defendant Benson continued her harassment campaign. She asked Plaintiff's bunkmate whether he was getting along with Plaintiff. (Grievance ECF No. 2017-10-3546-27B, ECF No. 1-1, PageID.45-52.) Plaintiff's bunkmate indicated he would like to separate from Plaintiff. (*Id.*) Rather than moving Plaintiff's bunkmate, however, Defendant Benson moved Plaintiff. (*Id.*) Plaintiff describes this action as an abuse of governmental power. (*Id.*) He filed another grievance against Defendant Benson that day.

A week later, Defendant Benson warned Plaintiff that he could not close the window flap on his cell door. (Grievance, ECF No. 2017-10-3635-27B, ECF No. 1-1, PageID.53-63.) Previously she had warned Plaintiff that he could not cover it with a piece of paper. (*Id.*) Plaintiff wanted to cover the flap so he could have privacy while urinating or while applying lotion after a shower. (*Id.*) Defendant Benson told Plaintiff to use his chair. (*Id.*) Plaintiff was worried he might get in trouble for using his chair for such a purpose, so he filed a grievance against Defendant Benson that day.

Plaintiff makes no other allegations against Defendant Benson.[2] He no longer had much contact with her because he was assigned to a floor porter position in another unit during her shift. (Prisoner Kite, ECF No. 1-1, PageID.113.) Indeed, Plaintiff acknowledges that Defendant Benson "stopped her harassment, threats, and unprofessional conduct towards [Plaintiff]." (Request for Rehearing, ECF No. 1-1, PageID.122.)

---

[1] Plaintiff also filed a complaint against Defendant Benson relating to this incident with the Department of Civil Service in Lansing, Michigan. (Staff Misconduct Compl., ECF No. 1-1, PageID.64-67.)

[2] Plaintiff's complaint raises claims that other Defendants retaliated against Plaintiff for filing grievances against Defendant Benson, but he does not allege that Defendant Benson participated in those retaliatory actions.

Although Plaintiff's problems with Defendant Benson ended, he was not able to resolve the pay rate issue with Defendant Haske. He contacted Defendant Haske on November 19, 2017, and November 28, 2017, at the suggestion of Corrections Officer Lee, in the hopes of securing the increased pay rate. When Plaintiff did not receive a response, he filed a grievance against Defendant Haske on November 28, 2017. (Grievance ECF-2017-12-3986-02C, ECF No. 1-1, PageID.68-71.)

Plaintiff's grievance was resolved at the first step. His certificate was verified by Defendant Haske, he was given a floor porter position, and his pay was increased to $1.08 per day. (*Id.*, PageID.71.) There were no floor porter positions in Plaintiff's housing unit, so he was put to work on the segregation floor. (*Id.*) Plaintiff did not want to work on the segregation floor because the conditions and cleaning requirements were unpleasant. He filed a grievance against Defendant Haske for giving him that assignment. (Grievance ECF-2017-12-4067-27Z, ECF No. 1-1, PageID.72-76.) The grievance was rejected.

A few weeks later, Plaintiff was found guilty of a major misconduct. He was confined in segregation for nearly two months. As a result, he was unable to perform his assignment, he was ineligible for assignments, and he would have to be reclassified. (Assignment Waiver Form, ECF No. 1-1, PageID.90.) Plaintiff filed a grievance against Defendant Haske for signing the Assignment Waiver Form. (Grievance ECF-2018-02-0362-02Z, ECF No. 1-1, PageID.81-88.) Plaintiff contended Haske's actions were inconsistent with the relevant MDOC policy directive.

Plaintiff's claims against the remaining Defendants relate to the major misconduct report (which Plaintiff claims was in retaliation for his filing of grievances against Defendant Benson), the determination of his guilt, and the horrific conditions the Defendants subjected him

to in punitive segregation. Plaintiff claims against the second group of Defendants first arose on January 17, 2018. (Compl., ECF No. 1, PageID.9.) On that date, Defendant Gainer shook down Plaintiff's cell and warned Plaintiff, "this is what happens when you file grievances and threaten to file lawsuits." (*Id*.) Plaintiff sought Gainer out for further explanation later that evening. Gainer told Plaintiff that Gainer, Defendant Austin and Defendant Iverson had read Plaintiff's grievances against Benson and they did not like Plaintiff's threats to file lawsuits against her. Gainer told Plaintiff "You are done." (*Id*., PageID.10.)

Minutes later, Plaintiff was called to the officer's station where he was handcuffed and led to segregation by Defendant Austin. (*Id*.) He was placed in a segregation cell by Defendant Davis. (*Id*.) The cell reeked of urine and feces; urine and feces coated the walls; neither the toilet nor the lights worked. (*Id*.)

A couple of hours later, Plaintiff learned why he was in segregation. He was accused of writing a letter to the warden that threatened violence against Defendant Benson. (*Id*., PageID.11-12.) Defendant Gainer had written a misconduct making the accusation; Defendants Austin and Iverson identified the writing as Plaintiff's. (*Id*.)

January 17, 2018, was the first day of a two-month period during which Defendants Gainer, Austin, Iverson, Davis, Thompson, Miseta, Thomas, Smith, Schiebner, Goodspeed, and Burke combined to, according to Plaintiff, falsely accuse and then convict Plaintiff of threatening behavior and subject him to unbearable conditions in segregation. Based on Plaintiff's allegations, it does not appear that Defendants Haske or Benson played any role in the misconduct proceedings, Plaintiff's placement in segregation, or the conditions Plaintiff suffered in segregation.

Plaintiff asks for compensatory and punitive damages from each defendant in the amount of $15,000.00. He also asks that the defendants be investigated and disciplined.

II. <u>Misjoinder</u>

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

6

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in

forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and

8

defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should his claims turn out to be frivolous.

Defendant Benson is the first Defendant named in the action. Plaintiff's allegations against her appear first in the complaint and are first in time. Plaintiff's claims against Defendant Benson span a week or two at the end of October, 2017. The claims became factually and legally complete when Defendant Benson interacted with Plaintiff on October 30, 2017, regarding how he might maintain his privacy without covering the window flap of his cell. Plaintiff's claim against Defendant Benson regarding the window flap incident and his claim against her regarding moving Plaintiff to a different cell are not related to the claims against the other parties. They do not arise from the same transactions, and there is no overlap with respect to the individuals involved or the time in which the events at issue occurred.

Plaintiff's claim against Benson regarding his pay rate, however, are related to his claim against Defendant Haske regarding the same issue. Although Plaintiff's other claims against Haske, claims regarding an undesirable job assignment and classification as unemployable, are not related to the claims against Benson, the commonality of the "pay rate" claim permits joining the other claims against Haske as well.

Other than that single point of commonality, Plaintiff's claims against the remaining Defendants are entirely unrelated to his claims against Benson. Though it is true that Plaintiff alleges the other Defendants retaliated against him because he filed grievances against Defendant Benson and Plaintiff alleges Defendant Benson retaliated against him for the same reason, the retaliatory acts are separated in time by months. It is also true that the major misconduct charge that Plaintiff claims was retaliatory was based on Plaintiff's written threat to harm

9

Defendant Benson. Nonetheless, Plaintiff's claims regarding the major misconduct are not related in time, place, or participants, with his claims against Defendant Benson. Absent any transactional relationship, Plaintiff's claims against the other Defendants cannot be joined to his claims against Defendant Benson.

The lack of commonality between Plaintiff's claims against Defendants Gainer, Austin, Iverson, Davis, Thompson, Miseta, Thomas, Smith, Shiebner, Goodspeed; and Burke, on the one hand, and his claims against Defendant Benson, on the other hand, dooms his attempted joinder. The same result follows from an examination of Plaintiff's claims against Defendants Gainer, Austin, Iverson, Davis, Thompson, Miseta, Thomas, Smith, Shiebner, Goodspeed; and Burke, on the one hand, and Defendant Haske, on the other.

Plaintiff's claims against Defendant Haske relating to Plaintiff's pay rate and the reassignment to a segregation floor porter have no relationship to Plaintiff's claims regarding the allegedly false and retaliatory misconduct charge or the resulting punishment. Although Plaintiff's punishment, and placement in segregation resulted in Haske reclassifying Plaintiff as unemployable, the reason for the punishment—which is the crux of the claims against Defendants Gainer, Austin, Iverson, Davis, Thompson, Miseta, Thomas, Smith, Shiebner, Goodspeed, and Burke—is not material to the reclassification. Thus, there is no transactional commonality between Plaintiff's claims against Haske and Plaintiff's claims against the remaining Defendants (other than Defendant Benson).

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group,*

*L.P.*, 541 U.S. 567, 572-573 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period

11

while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the actions about which Plaintiff complains occurred in late 2017 and early 2018, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop all Defendants other than the Defendants Benson and Haske from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff. *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). Accordingly,

**IT IS ORDERED** that Defendants Gainer, Austin, Iverson, Davis, Thompson, Miseta, Thomas, Smith, Shiebner, Goodspeed, and Burke will be **DROPPED** from this action because they are misjoined, and Plaintiff's claims against them will be **DISMISSED WITHOUT PREJUDICE**.

Dated:   August 2, 2018                          /s/ Paul L. Maloney
                                                                                                                                   Paul L. Maloney
                                                                                                                                   United States District Judge