UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT L. DYKES,

        Plaintiff,                   Case No. 1:18-cv-664

v.                                        Honorable Paul L. Maloney

UNKNOWN BENSON et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Benson and Haske for failure to state a claim.

## **Discussion**

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Michigan. The events about which

he complains occurred at that facility. Plaintiff sues ECF personnel including Corrections Officers Unknown, Benson, Unknown Gainer, Unknown Austin, Unknown Iverson, Unknown Davis, and Unknown Thompson; Classification Director Unknown Haske; Assistant Resident Unit Supervisior Unknown Miseta; Resident Unit Manager J. Thomas, Assistant Deputy Warden Unknown Smith; Deputy Warden Unknown Shiebner; Hearing Investigator Unknown Goodspeed; and Hearing Officer Unknown Burke. The Court previously entered an order dropping all Defendants other than Defendants Benson and Haske due to misjoinder.

Plaintiff arrived at ECF during September of 2017. Plaintiff was initially classified to work as a porter. (Program Classification Report, ECF No. 1-1, PageID.78.) Plaintiff alleges that he had previously earned a custodial maintenance certificate. (Plaintiff's Declaration, ECF No. 4, PageID.202.) He contends that a porter holding such a certificate was entitled to earn, initially, $1.08 per day and after 30 days $1.31 per day. (*Id*.) MDOC Policy Directive 05.02.110 supports Plaintiff's claim. The MDOC pays working prisoners according to a standard pay scale. *Id*. at ¶W. Where a prisoner is assigned to a semi-skilled or skilled position, he may be entitled to additional money. *Id*. at ¶X. The policy directive offers as an example of circumstances permitting additional payment the following: "prisoner is assigned as a porter <u>and</u> has completed a custodial maintenance technology program[.]" *Id*. Where a prisoner is required to work under unusually difficult conditions (the policy directive offers the example of "bloodborne pathogen cleanup"—a skill demonstrated by Plaintiff's certificate), he is entitled to one and one-half times the normal rate of pay.

Plaintiff was working as a general porter on October 21, 2017, when he raised the issue of his pay with Defendant Benson. (Compl., ECF No. 1, PageID.16.) The role of general porter is apparently not a semi-skilled or skilled position that might warrant the additional pay.

2

Plaintiff reports that Defendant Benson told Plaintiff he would never receive his correct pay, he would never receive a position higher than general porter, and that he may not even hold that position for long. (*Id*.) Benson told him that she would talk with Defendant Haske to "make sure." (*Id*.) Plaintiff describes Benson's conduct as an egregious abuse of authority. He filed a grievance against her that day for harassment. (Grievance ECF 2017-10-3533-17A, ECF No. 1-1, PageID.35-44.)[1]

The next day, Defendant Benson continued her harassment campaign. She asked Plaintiff's bunkmate whether he was getting along with Plaintiff. (Grievance ECF No. 2017-10-3546-27B, ECF No. 1-1, PageID.45-52.) Plaintiff's bunkmate indicated he would like to separate from Plaintiff. (*Id*.) Rather than moving Plaintiff's bunkmate, however, Defendant Benson moved Plaintiff. (*Id*.) Plaintiff describes this action as an abuse of governmental power. (*Id*.) He filed another grievance against Defendant Benson that day.

A week later, Defendant Benson warned Plaintiff that he could not close the window flap on his cell door. (Grievance, ECF No. 2017-10-3635-27B, ECF No. 1-1, PageID.53-63.) Previously she had warned Plaintiff that he could not cover it with a piece of paper either. (*Id*.) Plaintiff wanted to cover the flap in some way so he could have privacy while urinating or while applying lotion after a shower. (*Id*.) Defendant Benson told Plaintiff to use his chair. (*Id*.) Plaintiff was worried he might get in trouble for using his chair for such a purpose, so he filed a grievance against Defendant Benson that day.

---

[1] Plaintiff also filed a complaint against Defendant Benson relating to this incident with the Department of Civil Service in Lansing, Michigan. (Staff Misconduct Compl., ECF No. 1-1, PageID.64-67.)

Plaintiff makes no other allegations against Defendant Benson.[2] For reasons explained below, he no longer had much contact with her. He was moved to a floor porter position in another unit. For that reason, he was away from Defendant Benson's unit during her shift. (Prisoner Kite, ECF No. 1-1, PageID.113.) Indeed, Plaintiff acknowledges that Defendant Benson "stopped her harassment, threats, and unprofessional conduct towards [Plaintiff]." (Request for Rehearing, ECF No. 1-1, PageID.122.)

Although Plaintiff's problems with Defendant Benson ended, he was not able to resolve the pay rate issue with Defendant Haske. He contacted Defendant Haske on November 19, 2017, and November 28, 2017, at the suggestion of Corrections Officer Lee, for the purpose of securing the proper pay rate. When Plaintiff did not receive a response, he filed a grievance against Defendant Haske on November 28, 2017. (Grievance ECF-2017-12-3986-02C, ECF No. 1-1, PageID.68-71.)

Plaintiff's grievance was resolved at the first step. His certificate was verified by Defendant Haske, he was given a floor porter position, and his pay was increased to $1.08 per day. (*Id.*, PageID.71.) There were no floor porter positions in Plaintiff's housing unit, so he was put to work on the segregation floor. (*Id.*) Plaintiff did not want to work on the segregation floor because the conditions and cleaning requirements were unpleasant. He filed a grievance against Defendant Haske for giving him that assignment. (Grievance ECF-2017-12-4067-27Z, ECF No. 1-1, PageID.72-76.) The grievance was rejected.

A few weeks later, Plaintiff was found guilty of a major misconduct. He was confined in segregation for nearly two months. As a result, he was unable to perform his

---

[2] Plaintiff's complaint raises claims that other Defendants retaliated against Plaintiff for filing grievances against Defendant Benson, but he does not allege that Defendant Benson participated in those retaliatory actions. Those claims have been previously dismissed for misjoinder.

assignment, he was ineligible for assignments, and he had to be reclassified. (Assignment Waiver Form, ECF No. 1-1, PageID.90.) Plaintiff filed a grievance against Defendant Haske for signing the Assignment Waiver Form. (Grievance ECF-2018-02-0362-02Z, ECF No. 1-1, PageID.81-88.) Plaintiff contended Haske's actions were inconsistent with the relevant MDOC policy directive.

Plaintiff also alleges that Defendant Haske inappropriately classified Plaintiff to "Security Threat Group" status.

Plaintiff asks for compensatory and punitive damages from each defendant in the amount of $15,000.00. He also asks that the defendants be investigated and disciplined.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

5

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that these Defendants retaliated against him for participating in conduct protected by the First Amendment.

### III. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff contends that Defendant Haske and Benson retaliated against him for the grievances he filed, initially against Defendant Benson and eventually against Defendant Haske.

The initial adverse action by Defendant Benson was a threat to interfere with Plaintiff's ability to earn pay to his maximum potential. After that, Defendant Benson's adverse action was moving Plaintiff to a different cell at the request of Plaintiff's cellmate. Then, Defendant Benson allegedly took adverse action by telling Plaintiff to use a chair to maintain his privacy while naked.

Defendant Haske's initial adverse action was underpaying Plaintiff. Then, Defendant Haske gave Plaintiff an undesirable job assignment. Eventually, Defendant Haske reclassified Plaintiff following his major misconduct conviction.

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). With two exceptions, at this stage of the proceedings, it appears Plaintiff has adequately alleged actions sufficiently adverse to actually deter protected conduct.

The first exception is Plaintiff's complaint that Benson moved him to a different cell. He does not complain that Benson separated him from his cellmate, only that he was forced to move instead of his cellmate. Plaintiff does not complain that his new cell was inferior in any way to his previous cell. The Sixth Circuit has determined that transfers from the general

7

population of one prison to the general population of another are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *Hill v. Lappin,* 630 F.3d 468, 473 (6th Cir. 2010)*; Thaddeus-X*, 175 F.3d at 398. *A fortiori*, transfer from one cell to another in the same unit is not adverse action.

The second exception is Plaintiff's complaint that Defendant Benson told him to use a chair to maintain his privacy while naked. Plaintiff suggests that Defendant Benson may have thereby attempted to entrap him into an improper use of government property. That claim is far-fetched. No matter how liberally the Court construes the allegation, Plaintiff has failed to allege adverse action by Defendant Benson with regard to her "chair" recommendation.

Even if one accepts, for purposes of argument, that each of the alleged adverse actions is sufficient to deter Plaintiff from exercising his First Amendment rights, Plaintiff has failed to allege facts that demonstrate his grievances motivated the retaliatory conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A

8

screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed some grievances temporally proximate to Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Plaintiff has failed to allege any facts from which the Court might infer that moving Plaintiff to a different cell was motivated by anything other than the request of Plaintiff's cellmate. Similarly, Plaintiff offers nothing to indicate that Defendant Benson's suggestion to use a chair to maintain privacy was motivated by anything other than desire to stop Plaintiff from violating the rules by blocking his window flap.

Plaintiff merely alleges temporal proximity between Defendants' conduct and his many grievances. Such allegations are insufficient to state a retaliation claim. Moreover, Plaintiff

9

has not shown and cannot show that Defendant Benson's adverse actions on October 21 were motivated by retaliation for Plaintiff's protected conduct because Plaintiff does not allege any protected conduct that preceded the alleged adverse action.

Plaintiff's retaliatory motive allegations against Defendant Haske fare no better. There is nothing in the complaint to suggest that Plaintiff's pay for October and November was inconsistent with the job he was performing. Based on Plaintiff's allegations, the documents he has attached to his complaint, and the MDOC policy directives, it appears that Plaintiff's initial job as a general porter was not so skilled as to require an increased pay rate. Moreover, based on the account statement submitted with Plaintiff's application to proceed *in forma pauperis*, it appears that his pay was increased when he started the floor porter job in December of 2017. Plaintiff certainly alleges no facts from which the Court might infer that Defendant Haske set Plaintiff's pay rate too low because of Plaintiff's participation in protected conduct.

Moreover, based on Plaintiff's allegations, it appears that Defendant Haske's assignment of Plaintiff to the position of floor porter in the segregation unit was motivated by Plaintiff's quest for a higher pay rate and the absence of any floor porter positions in Plaintiff's unit—not by retaliatory animus. Plaintiff offers no facts from which the Court might infer that Defendant Haske assigned Plaintiff to the position of floor porter in the segregation unit because of Plaintiff's participation in protected conduct.

Plaintiff's reclassification to unemployable status naturally followed from his major misconduct violation. Once Plaintiff was placed in segregation, he was not eligible to work. MDOC Policy Directive 04.05.120. The fact that he was ineligible to work permits reclassification as unemployable. MDOC Policy Directive 05.01.100 (Effective 10/1/2017), ¶Z. The Assignment Waiver Form simply reflects that Defendant Haske reclassified Plaintiff as a result of the major

misconduct. Plaintiff offers no facts from which the Court might infer that Defendant Haske reclassified Plaintiff to unemployable status because of Plaintiff's participation in protected conduct.

Plaintiff's claim that Defendant Haske changed Plaintiff's Security Threat Group status is founded in a misreading of his daily schedule. Plaintiff was on "Double O" status. He was confined to his cell for that portion of the day he might otherwise be working. MDOC Policy Directive 05.01.100 (Eff 10.1.2017), ¶BB. His schedule indicates he was so restricted "in accordance with PD 05.01.100 or PD 04.04.113." (Offender Daily Schedule, ECF No. 1-1, PageID.92.) In this instance, Plaintiff's restriction is based on the first-identified policy regarding prisoner classification, not the second-identified policy regarding Security Threat Groups.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Benson and Haske will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   August 6, 2018                    /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           United States District Judge