UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT L. DYKES,

          Plaintiff,

v.

UNKNOWN BENSON et al.,

          Defendants.

_____/

Case No. 1:18-cv-664

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Smith, Schiebner, Goodspeed, and Burke for failure to state a claim.

### Discussion

I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Michigan. The events about which

he complains occurred at that facility. Plaintiff sues ECF personnel including Corrections Officers Unknown Benson, Unknown Gainer, Unknown Austin, Unknown Iverson, Unknown Davis, and Unknown Thompson; Classification Director Unknown Haske; Assistant Resident Unit Supervisor Unknown Miseta; Resident Unit Manager J. Thomas, Assistant Deputy Warden Unknown Smith; Deputy Warden Unknown Schiebner; Hearing Investigator Unknown Goodspeed; and Hearing Officer Unknown Burke.

The Court previously entered an order dropping all Defendants other than Defendants Benson and Haske due to misjoinder. Thereafter, the Court reviewed Plaintiff's complaint against Benson and Haske and concluded Plaintiff had failed to state a claim against them because, with respect to his retaliation claims, Plaintiff had failed to allege facts from which the Court might infer an impermissible retaliatory motive.

Plaintiff appealed the judgment. The Sixth Circuit Court of Appeals entered an order affirming the dismissal of one of Plaintiff's claims against Defendant Haske—the retaliation claim based on Haske's execution of an assignment waiver form—but vacating the Court's judgment in all other respects. It is the Court's understanding that the appellate court's vacation of the judgment reverses the Court's dismissal of the remaining retaliation claims against Haske and Benson and reverses the Court's misjoinder determination with respect to the other Defendants.

Plaintiff arrived at ECF during September of 2017. Plaintiff was initially classified to work as a porter. (Program Classification Report, ECF No. 1-1, PageID.78.) Plaintiff alleges that he had previously earned a custodial maintenance certificate. (Plaintiff's Declaration, ECF No. 4, PageID.202.) He contends that a porter holding such a certificate was entitled to earn, initially, $1.08 per day and after 30 days $1.31 per day. (*Id*.) MDOC Policy Directive 05.02.110

supports Plaintiff's claim. The MDOC pays working prisoners according to a standard pay scale. *Id*. at ¶ W. Where a prisoner is assigned to a semi-skilled or skilled position, he may be entitled to additional money. *Id*. at ¶ X. The policy directive offers as an example of circumstances permitting additional payment the following: "prisoner is assigned as a porter <u>and</u> has completed a custodial maintenance technology program[.]" *Id*. Where a prisoner is required to work under unusually difficult conditions (the policy directive offers the example of "bloodborne pathogen cleanup"—a skill demonstrated by Plaintiff's certificate), he is entitled to one and one-half times the normal rate of pay.

Plaintiff was working as a general porter on October 21, 2017, when he raised the issue of his pay with Defendant Benson. (Compl., ECF No. 1, PageID.16.) The role of general porter is apparently not a semi-skilled or skilled position that might warrant the additional pay. Plaintiff reports that Defendant Benson told Plaintiff he would never receive his correct pay, he would never receive a position higher than general porter, and that he may not even hold that position for long. (*Id*.) Benson told him that she would talk with Defendant Haske to "make sure." (*Id*.) Plaintiff describes Benson's conduct as an egregious abuse of authority. He filed a grievance against her that day for harassment. (Grievance ECF 2017-10-3533-17A, ECF No. 1-1, PageID.35-44.)[1]

The next day, Defendant Benson continued her harassment campaign. She asked Plaintiff's bunkmate whether he was getting along with Plaintiff. (Grievance ECF No. 2017-10-3546-27B, ECF No. 1-1, PageID.45-52.) Plaintiff's bunkmate indicated he would like to separate from Plaintiff. (*Id*.) Rather than moving Plaintiff's bunkmate, however, Defendant Benson moved

---

[1] Plaintiff also filed a complaint against Defendant Benson relating to this incident with the Department of Civil Service in Lansing, Michigan. (Staff Misconduct Compl., ECF No. 1-1, PageID.64-67.)

Plaintiff. (*Id.*) Plaintiff describes this action as an abuse of governmental power. (*Id.*) He filed another grievance against Defendant Benson that day. The grievance was rejected.

A week later, Defendant Benson warned Plaintiff that he could not close the window flap on his cell door. (Grievance, ECF No. 2017-10-3635-27B, ECF No. 1-1, PageID.53-63.) Previously she had warned Plaintiff that he could not cover it with a piece of paper either. (*Id.*) Plaintiff wanted to cover the flap in some way so he could have privacy while urinating or while applying lotion after a shower. (*Id.*) Defendant Benson told Plaintiff to use his chair. (*Id.*) Plaintiff was worried he might get in trouble for using his chair for such a purpose, so he filed a grievance against Defendant Benson that day.

Plaintiff makes no other allegations against Defendant Benson.[2] For reasons explained below, he no longer had much contact with her. He was moved to a floor porter position in another unit. For that reason, he was away from Defendant Benson's unit during her shift. (Prisoner Kite, ECF No. 1-1, PageID.113.) Indeed, Plaintiff acknowledges that Defendant Benson "stopped her harassment, threats, and unprofessional conduct towards [Plaintiff]." (Request for Rehearing, ECF No. 1-1, PageID.122.)

Although Plaintiff's problems with Defendant Benson ended, he was not able to resolve the pay rate issue with Defendant Haske. He contacted Defendant Haske on November 19, 2017, and November 28, 2017, at the suggestion of Corrections Officer Lee, for the purpose of securing the proper pay rate. When Plaintiff did not receive a response, he filed a grievance against Defendant Haske on November 28, 2017. (Grievance ECF-2017-12-3986-02C, ECF No. 1-1, PageID.68-71.)

---

[2] Plaintiff's complaint raises claims that other Defendants retaliated against Plaintiff for filing grievances against Defendant Benson, but he does not allege that Defendant Benson participated in those retaliatory actions.

Plaintiff's grievance was resolved at the first step. His certificate was verified by Defendant Haske, he was given a floor porter position, and his pay was increased to $1.08 per day. (*Id.*, PageID.71.) There were no floor porter positions in Plaintiff's housing unit, so he was put to work on the segregation floor. (*Id.*) Plaintiff did not want to work on the segregation floor because the conditions and cleaning requirements were unpleasant. He filed a grievance against Defendant Haske for giving him that assignment. (Grievance ECF-2017-12-4067-27Z, ECF No. 1-1, PageID.72-76.) The grievance was rejected.

A few weeks later, Plaintiff was found guilty of a major misconduct. He was confined in segregation for nearly two months. As a result, he was unable to perform his assignment, he was ineligible for assignments, and he had to be reclassified. (Assignment Waiver Form, ECF No. 1-1, PageID.90.) Plaintiff filed a grievance against Defendant Haske for signing the Assignment Waiver Form. (Grievance ECF-2018-02-0362-02Z, ECF No. 1-1, PageID.81-88.) Plaintiff contended Haske's actions were inconsistent with the relevant MDOC policy directive.

Plaintiff also alleges that Defendant Haske inappropriately classified Plaintiff to "Security Threat Group" status.

Plaintiff claims that Haske and Benson retaliated against him for Plaintiff's filing of grievances, which is conduct protected by the First Amendment.

Plaintiff's claims against the remaining defendants are a product of the major misconduct proceeding referenced above. Plaintiff alleges that on January 17, 2018, ten weeks after Plaintiff's last grievance against Defendant Benson, Defendant Gainer informed Plaintiff that he was about to find out what happens to prisoners who file grievances and threaten to file lawsuits. Gainer indicated that he and Defendants Austin and Iverson were going to act against Plaintiff. When Plaintiff asked for clarification, Defendant Gainer conveniently informed Plaintiff: "I, as

well as Austin and Iverson, read all of your grievances you wrote on C/O Benson complaining, and threatening to file lawsuits on her or anyone else for doing their job, well we don't like to have our officers threatened, and have to answer for grievances." (Compl., ECF No. 1, PageID.19.) That same day, Plaintiff was handcuffed and escorted to a segregation cell. On the way, Defendant Austin indicated that his group (Austin, Gainer, and Iverson) had arranged a special segregation cell for him.

Defendant Davis placed Plaintiff in an observation cell used for mentally-ill prisoners. Neither the light nor the toilet worked. The cell reeked of feces and urine. Plaintiff complained. Davis told Plaintiff to raise the issue with Defendant Miseta. When Miseta turned on the light, Plaintiff could see the walls were coated with feces and other unknown substances. Plaintiff asked Davis for cleaning supplies. Davis told Plaintiff he would have to wait until Saturday.

Later that night, Plaintiff learned why he had been placed in segregation. Defendant Gainer had filed a misconduct report stating that Defendants Austin and Iverson had discovered a handwritten note in the incoming mail that threatened to harm or kill Defendant Benson. Austin and Iverson were, purportedly, able to recognize the handwriting as Plaintiff's.

Later still, Defendant Austin brought Plaintiff's property to segregation. Austin deprived Plaintiff of his legal property, his Holy Koran, and his medication. Those items had been packed away.

On January 18, Plaintiff asked Defendant Miseta to move Plaintiff and for cleaning supplies. Defendant Miseta would not move Plaintiff and told him cleaning supplies would be available on Saturday, January 20. Plaintiff requested cleaning supplies from Defendant Thompson as well. Defendant Thompson told Plaintiff he would receive cleaning supplies on

January 20.  Plaintiff also asked Defendant Thompson for the legal property, Holy Koran, and medication that Austin had failed to provide.  Thompson said that was an issue for the officer who packed the property.  He told Plaintiff to kite the property room.  Plaintiff did so to no avail. Eventually, on January 25, Plaintiff wrote a grievance.  He received his property on February 1.

On January 20, Plaintiff asked Defendant Thompson for proper "blood-borne" protective gear to clean the feces off the walls.  Defendant Thompson refused.  Plaintiff was compelled to return the equipment he was provided, a sponge and toilet brush, after a short period of use.  He was then forced to clean with a sock and water.  Thompson told Plaintiff to raise the issue with Miseta.

Plaintiff filed a grievance regarding his cell.  Miseta asked him to sign off on the grievance.  Plaintiff refused unless he was moved or given proper cleaning equipment.  Miseta kept Plaintiff in the cell another 11 days without any proper cleaning equipment.

Plaintiff's misconduct hearing was held on January 25.  Before the hearing, Plaintiff had asked the hearing investigator, Defendant Goodspeed, to submit questions to housing unit staff and to review Plaintiff's institutional file.  Defendant Goodspeed never obtained the witness statements or reviewed Plaintiff's file.

Plaintiff contends the hearing officer, Defendant Burke, also failed him.  She refused his request for a handwriting expert and ignored relevant facts.  She compared the threatening note to handwriting exemplars from Plaintiff.  She found Plaintiff guilty of the charged Class I misconduct, Threatening Behavior.  Plaintiff claims the actions of Goodspeed and Burke were necessary to the success of the retaliatory scheme of the other Defendants.

Plaintiff alleges that Defendants Thomas, Smith, and Schiebner, each of whom at some point served on the Security Classification Committee that periodically reviewed Plaintiff

while he was in segregation, kept him in segregation when the Threatening Behavior misconduct warranted his transfer to another facility. Plaintiff filed a grievance to complain. He claims Defendant Smith, who interviewed Plaintiff on the grievance, told him he would be released from segregation if he signed off on it. He states that he signed off and he was released the next day.

Plaintiff attaches that grievance. The documents indicate that Plaintiff did not sign off on that grievance. He pursued it to the third step. The grievance was denied at each step.

It appears that Plaintiff conflates the "Smith-reviewed" grievance with another grievance. Plaintiff attaches another grievance filed against members of the Security Classification Committee based on that committee's February 28, 2018 classification review. That committee, however, was comprised of Defendants Miseta and Thompson and non-defendant Ball. In that grievance, Plaintiff claims that the committee never interviewed him even though the form the committee members completed indicates otherwise. On March 14, 2018, Defendant Thomas reviewed the grievance at the first step. Plaintiff signed off on the grievance. Defendant Thomas reports that Plaintiff was wrong regarding the weekly interview and that he had, in fact, been interviewed as required by policy. Moreover, Thomas reported that the Security Classification Committee conducted the monthly interview that day. After the monthly interview, the committee recommended release. This grievance, and not the Smith-reviewed grievance, must be the grievance at the heart of Plaintiff's retaliation claim against Defendants Thomas, Smith, and Schiebner.

In addition to the retaliation claims against Haske and Benson—claims that the appellate court has indicated are sufficient—Plaintiff contends that Defendants Gainer, Iverson, and Austin retaliated against him by manufacturing the threatening letter and writing a misconduct against Plaintiff based on the letter. Plaintiff claims further that Defendant Austin violated several

rights: (1) Plaintiff's First Amendment rights by interfering with the free exercise of Plaintiff's religion by packing away Plaintiff's Holy Koran; (2) Plaintiff's First Amendment right to access the Court's by packing away Plaintiff legal property; and (3) Plaintiff's Eighth Amendment rights by packing away Plaintiff's medication.

Plaintiff contends that Defendants Davis, Thompson, and Miseta violated Plaintiff's Eighth Amendment rights by keeping Plaintiff in a cell under intolerable conditions. Plaintiff claims further that Defendant Miseta violated Plaintiff's First Amendment rights by asking Plaintiff to sign off on his grievance regarding those conditions.

Plaintiff claims that Defendants Thomas, Smith, and Schiebner retaliated against Plaintiff for filing a grievance regarding the duration of his stay in segregation by threatening to extend Plaintiff's stay until he signed off on the grievance.

Finally, Plaintiff claims that Defendants Goodspeed and Burke violated his due process rights because of their actions or inactions with respect to the misconduct hearing. Plaintiff also suggests that Defendant Goodspeed and Burke, because their actions (or inactions) were so critical to the success of the retaliatory scheme of Gainer, Iverson, and Austin, are also liable for retaliation in violation of the First Amendment.

Plaintiff asks the Court to expunge the false misconduct, award tens of thousands of dollars in compensatory damages, and order an investigation of each Defendant and then impose appropriate discipline upon each Defendant.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that these Defendants retaliated against him for participating in conduct protected by the First Amendment.

### III. Defendant Burke is Immune from Suit

Defendant Burke is a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Plaintiff's claims against Defendant Burke will be dismissed.

### IV. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove

that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A. Protected Conduct

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's grievances against Defendant Benson appear to be constitutionally protected. Similarly, Plaintiff's grievance relating to the intolerable conditions of his initial segregation cell appears to be constitutionally protected. Finally, Plaintiff's grievance regarding the duration of his stay in segregation appears to be constitutionally protected.

### B. Adverse Action

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The adverse actions alleged by Plaintiff—a Class I misconduct and consequent punishment, intolerable segregation cell conditions, interference with free-exercise rights, interference with access to the courts, denial of medications, and the extension of Plaintiff's time in segregation—appear to be sufficiently adverse to actually deter protected conduct.

### C. Adverse Action Motivated by Protected Conduct

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Here, with respect to the adverse actions taken by Defendants Gainer, Iverson, and Austin, Plaintiff has alleged that he was specifically informed that these Defendants were acting against Plaintiff because of his protected conduct. Accordingly, Plaintiff has adequately alleged a retaliation claim against these Defendants.

Plaintiff's allegations of retaliatory motive fall short with respect to Defendants Goodspeed, Miseta, Smith, and Schiebner.[3] With respect to Defendant Goodspeed, Plaintiff does not allege that he filed a grievance against Defendant Goodspeed at any time before Defendant

---

[3] The Court's review of the complaint indicates that Plaintiff did not attempt to raise retaliation claims against Defendants Davis or Thompson. His claims against those Defendants are limited to violations of the Eighth Amendment.

13

Goodspeed took the adverse action—failing to adequately investigate the misconduct allegation. Moreover, Plaintiff does not allege that Defendant Goodspeed indicated that the alleged adverse action was motivated by Plaintiff's grievances against Defendant Benson filed months before the misconduct investigation and hearing. The only allegation of retaliatory motive is Plaintiff's contention that Goodspeed's failure to properly investigate was critical to the success of the retaliation scheme of Gainer, Iverson, and Austin.

With regard to Defendant Goodspeed, Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendant Goodspeed's actions were motivated by any of Plaintiff's protected conduct. Plaintiff does not even allege temporal proximity between Defendant Goodspeed's conduct and any of Plaintiff's many grievances. Such allegations are insufficient to state a retaliation claim.

Plaintiff's retaliatory motive allegations against Defendant Miseta fail as well. Plaintiff attempts to extract some evidence of a retaliatory motive from Miseta's review with Plaintiff of Plaintiff's grievance regarding the segregation cell conditions. During that review, Miseta asked Plaintiff to sign off on the grievance. Plaintiff refused unless Miseta moved Plaintiff to a different cell or provided Plaintiff proper cleaning supplies. Miseta declined Plaintiff's offer. Defendant Miseta did not threaten to treat Plaintiff better if Plaintiff signed off on the grievance or to treat Plaintiff worse if Plaintiff did not sign off on the grievance. Under these circumstances, no inference of retaliatory motive can be found in Miseta's refusal to change Plaintiff's cell or provide cleaning supplies.

The only facts Plaintiff offers to support the existence of a retaliatory motive for Defendants Thomas, Smith, and Schiebner is his claim that, at the first review of a grievance, the reviewer offered to let Plaintiff out of segregation if he signed off on the grievance. Such an offer

carries with it the implicit threat that Plaintiff will remain in segregation if he chooses to proceed with his grievance. Based on Plaintiff's allegations and the documents he attaches to his complaint, however, the only person who so threatened him was Defendant Thomas. Plaintiff offers nothing more to indicate that Defendants Smith or Schiebner proceeded with a retaliatory motive in any of their classification decisions. Accordingly, Plaintiff has stated a retaliation claim against Thomas but has failed to state such a claim against Defendants Smith or Schiebner.

V.     Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff raises two distinct Eighth Amendment claims: (1) Defendants Davis, Thompson, and Miseta were deliberately indifferent to Plaintiff's health and safety when they forced him remain in the intolerable segregation cell without the means to clean it; and (2) Defendant Austin was deliberately indifferent to Plaintiff's serious medical needs when he packed up Plaintiff's medications, ultimately depriving him of the medication for two weeks. The Court concludes that Plaintiff has adequately stated Eighth Amendment claims against these Defendants.

VI.    Due Process

Plaintiff claims that Defendant Goodspeed's failure to adequately investigate the misconduct allegations deprived Plaintiff of his right to due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff's due process claim against Goodspeed fails because he does not have a protected liberty interest in the prison disciplinary proceedings.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty

interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Similarly, the disciplinary sanction imposed on Plaintiff does not affect the duration of his sentence. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time,[5] a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008). Accordingly, Plaintiff has failed to state a due process claim against Defendant Goodspeed.

VII. First Amendment Access to the Courts

Plaintiff claims that Defendant Austin interfered with Plaintiff's access to the courts when Austin packed away Plaintiff's legal property instead of bringing it to Plaintiff. Prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

[5] For some crimes committed after December 15, 1998, and all crimes committed after December 15, 2000, Michigan prisoners are "penalized" with "disciplinary time" under a statute that abolished the disciplinary credit system. Mich. Comp. Laws § 800.34.

Amendments.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).  In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation.  *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.  Although Plaintiff complains that Defendant Austin hindered Plaintiff's ability to litigate, Plaintiff fails to identify specific underlying causes of action where he lost remedies as a result.  Accordingly, Plaintiff has failed to state a claim for interference with access to the courts.

VIII.    First Amendment Free Exercise of Religion

Plaintiff alleges that his First Amendment rights were violated because Defendant Austin prevented Plaintiff from accessing Plaintiff's Holy Koran for the first two weeks in segregation.  While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").   Plaintiff's allegations suffice to state a free exercise claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Smith, Schiebner, Goodspeed, and Burke will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's First Amendment retaliation claim against Defendant Miseta and Plaintiff's First Amendment access to the courts claim against Defendant Austin.  Plaintiff's First Amendment retaliation claims against Defendants Benson, Haske, Gainer, Iverson, Austin, and Thomas, Eighth Amendment claims against Defendants Davis, Thompson, Miseta, and Austin, and First Amendment free exercise claims against Defendant Austin remain in the case.

An order consistent with this opinion will be entered.


Dated:   February 1, 2019                    /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge