UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. DYKES,

                Plaintiff,

v.

UNKNOWN BENSON, *et al.*,

                Defendant.

_____/

Case No. 1:18-cv-664

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Robert L. Dykes, a state prisoner at a Michigan Department of Corrections (MDOC) facility.   This matter is now before the Court on defendants' motion for partial summary judgment based on failure to exhaust (ECF No. 43).

    **I.**        **Background**

    **A.**        **Procedural summary**

Plaintiff filed a complaint in which he sued 13 defendants at Oaks Correctional Facility (ECF): Corrections Officer (CO) Benson; CO Gainer; CO Austin; CO Iverson; CO Davis; CO Thompson; Classification Director Haske; Assistant Resident Unit Supervisor (ARUS) Miseta; Resident Unit Manager (RUM) Thomas; Assistant Deputy Warden Smith; Deputy Warden Shiebner; Hearing Investigator Goodspeed; and Hearing Officer Burke.   The Court entered an order dismissing all defendants except Benson and Haske for misjoinder.   *See* Order (ECF No. 6).

1

On initial screening, the Court dismissed the remaining claims against CO Benson and Classification Director Haske.   Opinion (ECF No. 7); Judgment (ECF No. 8).

Plaintiff appealed.   The Sixth Circuit Court of Appeals affirmed the dismissal of plaintiff's "retaliation claim against Haske with respect to the assignment waiver form," vacated the judgment, and remanded the balance of the matter to this Court.   *See Dykes-Bey v. Unknown Benson*, No. 18-1962 (6th Cir. Nov. 20, 2018) (ECF No. 15).   In reaching this result, the Sixth Circuit observed that "[t]he crux of [plaintiff's] complaint was not Benson's conduct toward him, but the other defendants' retaliation against him for filing grievances against Benson."   *Id.* at PageID.269.   "The bulk of [plaintiff's] complaint involved his allegations that the defendants, in retaliation for his grievances against Benson, refused to correct his pay rate, terminated him from his job, reassigned him to a hazardous job, falsified a misconduct report against him, deprived him of his property, placed him in an unsanitary cell, and kept him in segregation.   *Id.*

## B.    Plaintiff's complaint

On remand, this Court re-screened the complaint consistent with the Sixth Circuit's instructions.   As an initial matter, the Court outlined plaintiff's prison work assignment history at ECF.

Plaintiff arrived at ECF during September of 2017. Plaintiff was initially classified to work as a porter. (Program Classification Report, ECF No. 1-1, PageID.78.) Plaintiff alleges that he had previously earned a custodial maintenance certificate. (Plaintiff's Declaration, ECF No. 4, PageID.202.) He contends that a porter holding such a certificate was entitled to earn, initially, $1.08 per day and after 30 days $1.31 per day. (*Id.*) MDOC Policy Directive 05.02.110 supports Plaintiff's claim. The MDOC pays working prisoners according to a standard pay scale.   *Id.* at ¶ W. Where a prisoner is assigned to a semi-skilled or skilled position, he may be entitled to additional money.   *Id.* at ¶ X. The policy directive offers as an example of circumstances permitting additional payment the following: "prisoner is assigned as a porter and has completed a custodial maintenance technology program[.]" *Id.* Where a prisoner is required to work under unusually

2

difficult conditions (the policy directive offers the example of "bloodborne pathogen cleanup"—a skill demonstrated by Plaintiff's certificate), he is entitled to one and one-half times the normal rate of pay.

Opinion (ECF No. 17, PageID.277-278).

Next, the Court summarized plaintiff's allegations against defendants. For purposes of this report, the undersigned has set out the Court's summary of plaintiff's claims in separate sections.

### 1.    CO Benson

### a.    Harassment grievance

Plaintiff was working as a general porter on October 21, 2017, when he raised the issue of his pay with Defendant Benson. (Compl., ECF No. 1, PageID.16.) The role of general porter is apparently not a semi-skilled or skilled position that might warrant the additional pay. Plaintiff reports that Defendant Benson told Plaintiff he would never receive his correct pay, he would never receive a position higher than general porter, and that he may not even hold that position for long. (*Id.*) Benson told him that she would talk with Defendant Haske to "make sure." (*Id.*) Plaintiff describes Benson's conduct as an egregious abuse of authority. He filed a grievance against her that day for harassment. (Grievance ECF 2017-10-3533-17A, ECF No. 1-1, PageID.35-44.)

*Id*. at PageID.278.

### b.    New cell assignment grievance

The next day, Defendant Benson continued her harassment campaign. She asked Plaintiff's bunkmate whether he was getting along with Plaintiff. (Grievance ECF No. 2017-10- 3546-27B, ECF No. 1-1, PageID.45-52.) Plaintiff's bunkmate indicated he would like to separate from Plaintiff. (*Id.*) Rather than moving Plaintiff's bunkmate, however, Defendant Benson moved Plaintiff. (*Id.*) Plaintiff describes this action as an abuse of governmental power. (*Id.*) He filed another grievance against Defendant Benson that day. The grievance was rejected.

*Id*. at PageID.278-279.

### c.    Cell window grievance

A week later, Defendant Benson warned Plaintiff that he could not close the window flap on his cell door. (Grievance, ECF No. 2017-10-3635-27B, ECF No. 1-1, PageID.53-63.) Previously she had warned Plaintiff that he could not cover it with a piece of paper either.    (*Id.*) Plaintiff wanted to cover the flap in some way so he could have privacy while urinating or while applying lotion after a shower. (*Id.*)    Defendant Benson told Plaintiff to use his chair. (*Id.*) Plaintiff was worried he might get in trouble for using his chair for such a purpose, so he filed a grievance against Defendant Benson that day.

Plaintiff makes no other allegations against Defendant Benson. For reasons explained below, he no longer had much contact with her. He was moved to a floor porter position in another unit. For that reason, he was away from Defendant Benson's unit during her shift. (Prisoner Kite, ECF No. 1-1, PageID.113.) Indeed, Plaintiff acknowledges that Defendant Benson "stopped her harassment, threats, and unprofessional conduct towards [Plaintiff]." (Request for Rehearing, ECF No. 1-1, PageID.122.)

*Id*. at PageID.278-279.

### 2.    Classification Director Haske

### a.    Proper pay grievance

Although Plaintiff's problems with Defendant Benson ended, he was not able to resolve the pay rate issue with Defendant Haske. He contacted Defendant Haske on November 19, 2017, and November 28, 2017, at the suggestion of Corrections Officer Lee, for the purpose of securing the proper pay rate. When Plaintiff did not receive a response, he filed a grievance against Defendant Haske on November 28, 2017. (Grievance ECF-2017-12-3986-02C, ECF No. 1-1, PageID.68-71.

*Id*. at PageID.279.

### b.    Floor porter grievance

Plaintiff's grievance was resolved at the first step. His certificate was verified by Defendant Haske, he was given a floor porter position, and his pay was increased to $1.08 per day. (*Id.*, PageID.71.) There were no floor porter positions in Plaintiff's housing unit, so he was put to work on the segregation floor. (*Id.*) Plaintiff did not want to work on the segregation floor because the conditions and cleaning requirements were unpleasant. He filed a grievance against Defendant

Haske for giving him that assignment. (Grievance ECF-2017-12-4067-27Z, ECF No. 1-1, PageID.72-76.) The grievance was rejected.

*Id.* at PageID.280.

### c.    Major misconduct and Assignment Waiver form grievance

A few weeks later, Plaintiff was found guilty of a major misconduct. He was confined in segregation for nearly two months. As a result, he was unable to perform his assignment, he was ineligible for assignments, and he had to be reclassified. (Assignment Waiver Form, ECF No. 1-1, PageID.90.) Plaintiff filed a grievance against Defendant Haske for signing the Assignment Waiver Form. (Grievance ECF-2018-02-0362-02Z, ECF No. 1-1, PageID.81-88.) Plaintiff contended Haske's actions were inconsistent with the relevant MDOC policy directive.

*Id.* at PageID.280.

### d.    Classification to Security Threat Group status

Plaintiff also alleges that Defendant Haske inappropriately classified Plaintiff to "Security Threat Group" ("STG") status.

*Id.*

### 3.    Retaliation claims against Classification Director Haske and CO Benson

Plaintiff claims that Haske and Benson retaliated against him for Plaintiff's filing of grievances, which is conduct protected by the First Amendment.

*Id.*

### 4.    COs Gainer, Austin and Iverson and the "special segregation cell"

Plaintiff's claims against the remaining defendants are a product of the major misconduct proceeding referenced above. Plaintiff alleges that on January 17, 2018, ten weeks after Plaintiff's last grievance against Defendant Benson, Defendant Gainer informed Plaintiff that he was about to find out what happens to prisoners who file grievances and threaten to file lawsuits. Gainer indicated that he and Defendants Austin and Iverson were going to act against Plaintiff. When Plaintiff asked for clarification, Defendant Gainer conveniently informed Plaintiff: "I, as well as Austin and Iverson, read all of your grievances you wrote on C/O Benson complaining, and threatening to file lawsuits on her or anyone else for

doing their job, well we don't like to have our officers threatened, and have to answer for grievances." (Compl., ECF No. 1, PageID.19.) That same day, Plaintiff was handcuffed and escorted to a segregation cell. On the way, Defendant Austin indicated that his group (Austin, Gainer, and Iverson) had arranged a special segregation cell for him.

*Id*. at PageID.280-281.

### 5.    CO Davis and the dirty cell

Defendant Davis placed Plaintiff in an observation cell used for mentally ill prisoners. Neither the light nor the toilet worked. The cell reeked of feces and urine. Plaintiff complained. Davis told Plaintiff to raise the issue with Defendant Miseta. When Miseta turned on the light, Plaintiff could see the walls were coated with feces and other unknown substances. Plaintiff asked Davis for cleaning supplies. Davis told Plaintiff he would have to wait until Saturday.

*Id*. at PageID.281.

### 6.    COs Gainer, Austin and Iverson and the note threatening to harm or kill CO Benson

Later that night, Plaintiff learned why he had been placed in segregation. Defendant Gainer had filed a misconduct report stating that Defendants Austin and Iverson had discovered a handwritten note in the incoming mail that threatened to harm or kill Defendant Benson. Austin and Iverson were, purportedly, able to recognize the handwriting as Plaintiff's.

*Id*.

### 7.    CO Austin deprived plaintiff of property

Later still, Defendant Austin brought Plaintiff's property to segregation. Austin deprived Plaintiff of his legal property, his Holy Koran, and his medication. Those items had been packed away.

*Id*.

### 8.    CO Thompson, ARUS Miseta and the cleaning supplies

On January 18, Plaintiff asked Defendant Miseta to move Plaintiff and for cleaning supplies. Defendant Miseta would not move Plaintiff and told him cleaning supplies would be available on Saturday, January 20. Plaintiff requested cleaning supplies from Defendant Thompson as well. Defendant Thompson told

Plaintiff he would receive cleaning supplies on January 20. Plaintiff also asked Defendant Thompson for the legal property, Holy Koran, and medication that Austin had failed to provide. Thompson said that was an issue for the officer who packed the property. He told Plaintiff to kite the property room. Plaintiff did so to no avail. Eventually, on January 25, Plaintiff wrote a grievance. He received his property on February 1.

*Id*. at PageID.281-282.

### 9. ARUS Thompson and the protective gear

On January 20, Plaintiff asked Defendant Thompson for proper "blood-borne" protective gear to clean the feces off the walls. Defendant Thompson refused. Plaintiff was compelled to return the equipment he was provided, a sponge and toilet brush, after a short period of use. He was then forced to clean with a sock and water. Thompson told Plaintiff to raise the issue with Miseta.

*Id*. at PageID.282.

### 10. Plaintiff's grievance regarding the cell

Plaintiff filed a grievance regarding his cell. Miseta asked him to sign off on the grievance. Plaintiff refused unless he was moved or given proper cleaning equipment. Miseta kept Plaintiff in the cell another 11 days without any proper cleaning equipment.

*Id*.

### 11. Hearing Investigator Goodspeed

Plaintiff's misconduct hearing was held on January 25. Before the hearing, Plaintiff had asked the hearing investigator, Defendant Goodspeed, to submit questions to housing unit staff and to review Plaintiff's institutional file. Defendant Goodspeed never obtained the witness statements or reviewed Plaintiff's file.

*Id*.

### 12. Hearing Officer Burke

Plaintiff contends the hearing officer, Defendant Burke, also failed him. She refused his request for a handwriting expert and ignored relevant facts. She compared the threatening note to handwriting exemplars from Plaintiff. She found Plaintiff guilty of the charged Class I misconduct, Threatening Behavior. Plaintiff

claims the actions of Goodspeed and Burke were necessary to the success of the retaliatory scheme of the other Defendants.

*Id*.

### 13.    Thomas, Smith, Schiebner and the Security Classification Committee

Plaintiff alleges that Defendants Thomas, Smith, and Schiebner, each of whom at some point served on the Security Classification Committee that periodically reviewed Plaintiff while he was in segregation, kept him in segregation when the Threatening Behavior misconduct warranted his transfer to another facility. Plaintiff filed a grievance to complain. He claims Defendant Smith, who interviewed Plaintiff on the grievance, told him he would be released from segregation if he signed off on it. He states that he signed off and he was released the next day.

Plaintiff attaches that grievance. The documents indicate that Plaintiff did not sign off on that grievance. He pursued it to the third step. The grievance was denied at each step.

It appears that Plaintiff conflates the "Smith-reviewed" grievance with another grievance. Plaintiff attaches another grievance filed against members of the Security Classification Committee based on that committee's February 28, 2018 classification review. That committee, however, was comprised of Defendants Miseta and Thompson and non-defendant Ball. In that grievance, Plaintiff claims that the committee never interviewed him even though the form the committee members completed indicates otherwise. On March 14, 2018, Defendant Thomas reviewed the grievance at the first step. Plaintiff signed off on the grievance. Defendant Thomas reports that Plaintiff was wrong regarding the weekly interview and that he had, in fact, been interviewed as required by policy. Moreover, Thomas reported that the Security Classification Committee conducted the monthly interview that day. After the monthly interview, the committee recommended release. This grievance, and not the Smith-reviewed grievance, must be the grievance at the heart of Plaintiff's retaliation claim against Defendants Thomas, Smith, and Schiebner.

*Id*. at PageID.282-283.

### 14.    Plaintiff's claims against defendants Gainer, Iverson, and Austin

In addition to the retaliation claims against Haske and Benson—claims that the appellate court has indicated are sufficient—Plaintiff contends that Defendants Gainer, Iverson, and Austin retaliated against him by manufacturing the threatening letter and writing a misconduct against Plaintiff based on the letter. Plaintiff claims

8

further that Defendant Austin violated several rights: (1) Plaintiff's First Amendment rights by interfering with the free exercise of Plaintiff's religion by packing away Plaintiff's Holy Koran; (2) Plaintiff's First Amendment right to access the Court's by packing away Plaintiff legal property; and (3) Plaintiff's Eighth Amendment rights by packing away Plaintiff's medication.

*Id.* at PageID.283-284.

### 15.     Plaintiff's claims against defendants Davis, Thompson, and Miseta

Plaintiff contends that Defendants Davis, Thompson, and Miseta violated Plaintiff's Eighth Amendment rights by keeping Plaintiff in a cell under intolerable conditions.   Plaintiff claims further that Defendant Miseta violated Plaintiff's First Amendment rights by asking Plaintiff to sign off on his grievance regarding those conditions.

*Id.* at PageID.284.

### 16.     Plaintiff's claims against defendants Thomas, Smith and Schiebner

Plaintiff claims that Defendants Thomas, Smith, and Schiebner retaliated against Plaintiff for filing a grievance regarding the duration of his stay in segregation by threatening to extend Plaintiff's stay until he signed off on the grievance.

*Id.*

### 17.     Plaintiff's claims against defendants Goodspeed and Burke

Finally, Plaintiff claims that Defendants Goodspeed and Burke violated his due process rights because of their actions or inactions with respect to the misconduct hearing. Plaintiff also suggests that Defendant Goodspeed and Burke, because their actions (or inactions) were so critical to the success of the retaliatory scheme of Gainer, Iverson, and Austin, are also liable for retaliation in violation of the First Amendment.

*Id.*

### 18.     Plaintiff's claims for relief

Plaintiff asks the Court to expunge the false misconduct, award tens of thousands of dollars in compensatory damages, and order an investigation of each Defendant and then impose appropriate discipline upon each Defendant.

*Id.*

### C.    The Court's dismissal of some claims

In re-screening this case, the Court dismissed defendants Smith, Schiebner, Goodspeed and Burke, as well as some claims against the other defendants.   Opinion at PageID.295.   Ultimately the Court concluded that, "Plaintiff's First Amendment retaliation claims against Defendants Benson, Haske, Gainer, Iverson, Austin, and Thomas, Eighth Amendment claims against Defendants Davis, Thompson, Miseta, and Austin, and First Amendment free exercise claims against Defendant Austin remain in the case."   *Id.* at PageID.295. Defendants have moved for summary judgment for lack of exhaustion on the remaining claims.   In order to address defendants' arguments, it is necessary for the Court to identify the specific claims which remain in this case.[1]

### 1.    Defendants Benson and Haske

In following the Sixth Circuit's order, this Court allowed all of the retaliation claims against CO Benson and Classification Director Haske to proceed except plaintiff's "retaliation claim based on Haske's execution of an assignment waiver form."   *Id.* at PageID.277.

### 2.    Defendant Burke

The Court dismissed Hearing Officer Burke, noting that Burke had absolute judicial immunity from plaintiff's claims brought pursuant to § 1983.   *Id.* at PageID.286.

---

[1]  The Court notes that plaintiff's allegations comprise a veritable book, *i.e.*, a 29-page complaint (ECF No. 1) and 157 pages of exhibits (ECF No. 1-1).

### 3.    Defendants Gainer, Iverson and Austin

The Court concluded that plaintiff adequately alleged a retaliation claim against these three corrections officers.   *Id*. at PageID.288.

### 4.    Defendants Goodspeed, Miseta, Smith and Schiebner

The Court dismissed all of plaintiff's retaliation claims against Hearing Investigator Goodspeed, ARUS Miseta, Assistant Deputy Warden Smith, and Deputy Warden Schiebner.   *Id*. at PageID.288-289.

### 5.    Defendant Thomas

The Court allowed plaintiff's retaliation claim to proceed against RUM Thomas for the "implicit threat that Plaintiff will remain in segregation if he chooses to proceed with his grievance."   *Id*. at PageID.290.

### 6.    Eighth Amendment claims against defendants Davis, Thompson, Miseta and Austin

The Court found that plaintiff adequately stated Eighth Amendment claims against these four defendants.   First, CO Davis, CO Thompson, and ARUS Miseta were deliberately indifferent to plaintiff's health and safety when they forced him remain in the intolerable segregation cell without the means to clean it.   *Id*. at PageID.291.   Second, CO Austin was deliberately indifferent to plaintiff's serious medical needs when he packed up plaintiff's medications, ultimately depriving him of the medication for two weeks.   *Id*.

### 7.    Procedural due process claim against defendant Goodspeed

The Court dismissed plaintiff's procedural due process claim alleged against Hearing Investigator Goodspeed.   *Id*.

### 8.    First Amendment access to the courts claim against Austin

The Court dismissed plaintiff's access to the courts claim alleged against CO Austin.  *Id*. at PageID.294.

### 7.    First Amendment religious claim against defendant Austin

The Court allowed plaintiff's claim that CO Austin violated his First Amendment right to free exercise of religion, *i.e.*, "Austin prevented Plaintiff from accessing Plaintiff's Holy Koran for the first two weeks in segregation."  *Id*. at PageID.295.

## II.    Defendant's motion for summary judgment

### A.    Legal standard for summary judgment

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## B.    Failure to Exhaust

### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

13

## 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).   A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.   *Id.* at ¶ P.   If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.   *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).   The prisoner must send the Step I grievance to the appropriate grievance coordinator.   *Id.* at ¶ V.   If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.   *Id.* at ¶ BB.   Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.   *Id.* at ¶ FF.

## C.    Discussion

In their motion for summary judgment, defendants contend that plaintiff did not properly exhaust some of his claims against defendants Benson, Gainer, Austin, Iverson, Davis, Thompson, Haske, Miseta, and Thomas.

1.    **CO Benson's retaliation**

Defendant Benson contends that plaintiff did not exhaust his claims that she retaliated against plaintiff by moving him to a different cell and making comments about his window flap (*i.e.*, that he had to keep his window flap open and that he could not have paper in the window flap to obstruct her view into the cell).   See Defendants' Brief (ECF No. 44, PageID.386). Defendants acknowledge that plaintiff filed a grievance about these issues, ECF17-10-3635-27B ("3635") (ECF No. 44-4, PageID.500-506), listing an incident date of October 30, 2017.   *Id*. Defendants contend that Grievance 3635 was not properly exhausted, because it was rejected at Step I as an attempt to grieve the content of policy and procedure, with the rejection upheld through Steps II and III.   *Id*.

Defendant also points out that plaintiff did not exhaust his claim that she moved him to a different cell.   In Grievance ECF-17-10-3546-27B ("3546") (incident date October 22, 2017) (ECF No. 44-4, PageID.496-499), plaintiff filed a grievance against Benson because she moved him to a new cell.   The grievance was rejected because plaintiff could not grieve policy and procedure or placement.   *See* Grievance 3456.   At the Step II appeal, plaintiff tried to claim that he was grieving Benson.   *Id*.   One of the reasons for the MDOC's rejection was "[s]imply stating that you were moved when you did not request it is not a violation of policy but a routine occurrence to maintain good order of the facility."   *Id*. at PageID.498.   This grievance was not properly exhausted.

In his response plaintiff stated that "the Plaintiff only has a retaliatory sexual harassment claim against benson [sic], a retaliatory claim for the taking of money owed to him, and a retaliatory claim for the unauthorized termination of his unit poter [sic] job and the placing

15

of him in a hazardous job."  Plaintiff's Response (ECF No. 47, PageID.512).  In response to defendants' motion, plaintiff claims that Grievance 3635 was improperly rejected.  The administrative record reflects that Grievance 3635 was rejected. Plaintiff's disagreement with the MDOC's decision to reject this grievance does not make the MDOC's action improper.

Finally, plaintiff contends that he exhausted the grievance related to ECF-2017-10-3533-17A ("3533"), which alleged "retaliatory harassment" related to his work assignment as a porter.  *Id*.  Plaintiff's response is moot, because defendants do not claim that Grievance 3533 is unexhausted.

For these reasons, defendant Benson should be granted summary judgment with respect to plaintiff's claims that she retaliated against him with respect to covering the widow or transferring him to a different cell.  Plaintiff's only remaining claim is that Benson retaliated against him by telling plaintiff that he would never receive his correct pay, that he would never receive a position higher than general porter, and that he might lose his current job assignment.

## 2.    Classification Director Haske's retaliation

Defendants point out that plaintiff failed to exhaust his retaliation claim that Haske falsified an assignment waiver form.  Defendants' Brief at PageID.388-389.  However, as discussed, the Sixth Circuit affirmed the dismissal of this claim.  Plaintiff's only remaining retaliation claims against Haske are:  that Haske failed to secure plaintiff proper pay; that Haske assigned plaintiff to work on the segregation floor where "the conditions and cleaning requirements were unpleasant;" and, that Haske inappropriately classified plaintiff to STG status. *See* Opinion at PageID.279-280.

16

17

### 3.    CO Gainer, CO Austin, and CO Iverson's false misconduct

Defendants Gainer, Austin and Iverson contend that plaintiff's claim that they retaliated against him by filing a "false" threatening behavior misconduct related to defendant Benson appears unexhausted.   Misconduct decisions and issues related to the hearing process are non-grievable under MDOC's grievance policy.   *See* MDOC Policy Directive 03.02.130 at ¶ F.2. Under *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011), a prisoner claiming that the issuance of a major misconduct violation constituted retaliation must raise that issue at the misconduct hearing.   The record here shows that plaintiff did not raise retaliation by Gainer, Austin, and Iverson as a defense at his misconduct hearing.   Instead, the Class I Misconduct Hearing information shows that plaintiff denied writing the threatening letter to Benson, claimed that he had no animosity toward Benson, and stated that he wanted a handwriting expert.   *See* Class I Misconduct Hearing Report (ECF No. 44-2, PageID.394-395. In short, plaintiff's retaliation claims against defendants Gainer, Austin, and Iverson are not properly exhausted because he failed to raise retaliation as a defense to the misconduct.

Plaintiff contends that he exhausted the issue because he raised it during his appeal of the hearing.   *See* Plaintiff's Response (ECF No. 47, PageID.511-512).   Plaintiff's contention is without merit.   To properly exhaust the claim, plaintiff had to raise his retaliation theory during the administrative hearing.   *See Smith v. Goulet*, No. 1:17-cv-618, 2018 WL 4374976 at *5 (June 20, 2018), R&R adopted, 2018 WL 3688468 (W.D. Mich. Aug. 3, 2018), appeal dismissed, No. 18-1937, 2018 WL 6118451 (6th Cir. Aug. 22, 2018) ("Plaintiff was required to raise his retaliation and substantive due process claims at the administrative hearing.") (citing *Siggers*, 652 F.3d at 693-94).   *See also, Ayotte v. Stemen*, No. 15-13826, 2016 WL 5027594 at *3 (E.D. Mich. Sept.

20, 2016) ("[P]er *Siggers v. Campbell*, a prisoner must raise the argument that a misconduct ticket was issued based retaliation or conspiracy during the first misconduct hearing in order to properly exhaust these claims.").

In summary, plaintiff did not properly exhaust these retaliation claims against defendants Austin, Gainer, and Iverson.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Siggers*, 652 F.3d at 693-94.  Accordingly, defendants' motion for summary judgment should be granted with respect to these claims, and defendants Gainer and Iverson should be dismissed from this case.

### 4.      RUM Thomas' threat to extend plaintiff's segregation

Defendants contend that there is no evidence that plaintiff exhausted a retaliation claim against RUM Thomas, noting the absence of a Step III grievance filed against Thomas for retaliation, *i.e.*, that Thomas threatened to extend plaintiff's stay in segregation until he signed off on a grievance.   Plaintiff has not produced evidence that he exhausted such a grievance.   Plaintiff did not properly exhaust this retaliation claim against defendant Thomas.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.   Accordingly, defendant Thomas' motion for summary judgment should be granted with respect to this claim.

### 5.      CO Thompson, CO Davis, and ARUS Miseta

CO Thompson, CO Davis, and ARUS Miseta acknowledge that plaintiff exhausted his claim that they subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they placed him in an unsanitary cell in January 17, 2018.   Defendants cite Grievance 277, which states that on January 17, 2018, plaintiff he was placed in an observation cell (4-126) which had a filthy toilet, that he was humiliated by having to use the toilet "under the

19

watchful eye of the camera", that he had "to sit and wait for staff to flush my toilet", that he wanted to be moved to another cell, and that on January 25, 2018, plaintiff noticed a rash between his thighs.   *See* Defendants' Brief (ECF No. 44, PageID.390-391); Grievance 277 at PageID.459-460.

CO Thompson and ARUS Miseta contend that plaintiff did not exhaust a separate claim directed at them for denying plaintiff's request for cleaning supplies and protective gear to clean the cell.  *Id*. at PageID.391.   The gist of plaintiff's grievance is that defendants placed him in a filthy cell which resulted in him catching a rash.   According to plaintiff, he was in an observation cell and relied on prison staff to do everything for him, including flushing the toilet. While it is unclear whether plaintiff could possess cleaning supplies in that cell, his Grievance 277 was sufficient to alert authorities to the complaint of intolerable living conditions.   Under these circumstances, Grievance 277 can be construed as sufficient to support plaintiff's claim that CO Thompson and ARUS Miseta violated plaintiff's Eighth Amendment rights by denying his request for cleaning supplies.   This claim would be consistent with plaintiff's grievance that he was being housed in a filthy cell and relied on MDOC employees to clean his cell.   *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (it is sufficient for a court to find that a grievance "gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint").  Accordingly, defendants Thompson and Miseta's motion for summary judgment should be denied with respect to this claim.

### 6.      Defendant Austin and the religious material

Defendants contend that plaintiff did not properly exhaust his claim that defendant Austin violated his First Amendment free-exercise claim because the grievance, ECF-18-01-0278-

20

28c ("278") as rejected at Step III based on the rejection code "28c" which means multiple issues. The Court notes that the original grievance was denied on the merits, *i.e.*, "[w]hen the respondent came to your cell for your grievance interview he stated that you showed him that you did in fact receive all of your property and medication."  Grievance 278 (ECF No. 44-4, PageID.467, 470).

Based on this record, the MDOC did not address the merits at Step III because plaintiff used his Step III appeal to raise multiple issues not addressed in his grievance.   Rather, plaintiff's Step III appeal stated:

> The violations had already occurred by the time I was interviewed (1-17-18) to (2-1-18).  Officials are more interested in protecting each other rather than allowing the disciplinary process of its own officials take place or necessary corrections.  The fact that no one has denied whether I was denied the property complained of, establishes my claim, as fact.  28 U.S.C. 1746.

*Id*. at PageID.468.

Based on this record, plaintiff's claim was not properly exhausted.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.   Accordingly, defendant Austin's motion for summary judgment should be granted as to this claim.

### E.    Summary

### 1.    Plaintiff's unexhausted claims.

The followings claims should be dismissed for lack of proper exhaustion.

a.    CO Benson retaliated against plaintiff by (1) harassing him to cover the cell window, and (2) transferring him to a different cell.

b.    CO Austin, CO Gainer, and CO Iverson retaliated against plaintiff by filing a "false" threatening behavior misconduct.

      c.     RUM Thomas retaliated against plaintiff by threatening to extend plaintiff's stay in segregation until he signed off on a grievance.

      d.     CO Austin denied plaintiff access to religious property.

**2.    Plaintiff's remaining claims**

The following claims should proceed.

      a.     CO Benson retaliated against plaintiff regarding his prison work assignment (plaintiff would never receive his correct pay, plaintiff would never receive a position higher than general porter, and plaintiff might lose his current work assignment).

      b.     Classification Director Haske failed to secure plaintiff proper pay, assigned plaintiff to work on the segregation floor where "the conditions and cleaning requirements were unpleasant," and inappropriately classified plaintiff to STG status.

      c.     CO Davis, CO Thompson, and ARUS Miseta were deliberately indifferent to plaintiff's health and safety when they forced him to remain in the intolerable segregation cell.

      d.     CO Austin was deliberately indifferent to plaintiff's serious medical needs when he packed up plaintiff's medications and deprived plaintiff of medication for two weeks.

      e.     CO Thompson and ARUS Miseta denied plaintiff's request for cleaning supplies and equipment.

**III.    Recommendation**

For the reasons set forth above, I respectfully recommend that defendant's motion for partial summary judgment (ECF No. 43) be **GRANTED in part** as to the claims set forth in § II.E.1.

I further recommend that defendants Gainer, Iverson, and Thomas be **DISMISSED** from this action.

I further recommend that plaintiff's case proceed against defendants Benson, Haske, Davis, Thompson, Miseta and Austin as set forth in § II.E.2.

Dated:  March 13, 2020                    /s/ RAY KENT
                                          Ray Kent
                                          United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

23